KENTUCKY BAR ASSOCIATION,
Complainant,

v.

Keith D. BAKER, Respondent.

No. 94-SC-526-KB.

Supreme Court of Kentucky.

Dec. 22, 1994.

As Modified Jan. 19, 1995.

Bruce K. Davis, Barbara S. Rea, and David B. Pearce, Kentucky Bar Ass'n, Frankfort, for complainant.

Keith D. Baker, Pro Se.

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association found Keith D. Baker guilty of violating DR5-104(A) of the American Bar Association Code of Professional Responsibility (1969 Edition), which was made applicable to Baker by SCR 3.130 (as effective through December 31, 1989). DR5-104(A) states in pertinent part:

A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

A majority of the Board recommended Baker be suspended from the practice of law for nine months. Baker requested this Court to review the Decision of the Board of Governors.

In August 1988, while acting as trustee of a "Clifford Trust" established by Coy Smith, grantor, naming his daughter, Sheila Smith Dixon, beneficiary, Baker converted portions of the trust corpus to cash and loaned himself $15,000 from trust assets. The sale of the trust assets and loan were accomplished without the knowledge or consent of the grantor or beneficiary. Baker executed a promissory note, with a date of execution of August 10, 1988, in which he borrowed $15,000 from the Coy D. Smith Trust, payable to himself as trustee, bearing interest at 1% above the prime lending rate. The promissory note was not secured at the time of execution.

After the loan was accomplished, Baker did not immediately inform Smith, or any party interested in the administration of the trust, of the existence of the $15,000 loan. The existence of the transaction and loan

were discovered by Smith and others interested in the administration of the trust only after account statements were produced for the purpose of preparing the income tax return required for the relevant year.

After Smith became aware of the loan, he consulted another attorney who met with Baker. On April 14, 1989, Baker executed a mortgage to secure the loan and shortly thereafter executed a security agreement pledging certain personal collateral for the debt. Smith's attorney suggested to Baker that it would be appropriate for him to resign as trustee, and he did ultimately resign as trustee.

Baker's promissory note became due and payable on August 10, 1989, and demand for payment was made shortly thereafter. Approximately October 23, 1989, Baker paid in full the principal amount of the debt, $15,000, as well as $2100 in accrued interest, and $2873 in additional costs incurred for federal and state tax liability from the sale of the trust corpus stock. Baker also paid $1500 in attorney fees incurred by the trust as a result of the transaction. The trust incurred penalties and interest on its 1988 tax return in the amount of $838 and accounting expenses of $335 by virtue of the transaction, which sums Baker was not requested to pay.

Baker claims he completely investigated the climate of the lending community and the volatility of the stock market and determined that it would be prudent and profitable for the Trust to extend the loan. He further claims he did not advise Smith, the grantor, of the loan because it was his "genuine and sincere belief" that if Smith were permitted to dictate the use of the trust during a period in excess of ten years, such involvement would jeopardize the validity of the trust for Internal Revenue Service purposes. However, Baker had conferred with Smith on at least two occasions regarding the management and investment of the trust assets and had also conferred with representatives of Merrill Lynch regarding the most prudent investment of the trust corpus.

■ Baker claims a number of procedural irregularities in the KBA proceedings mandate judicial review. He first complains that SCR 3.360(2) was violated. The Rule provides:

> The Trial Commissioner *shall* file his report with the Board within thirty (30) days after the transcript of evidence has been filed by the court reporter with the Director, or *shall* file a verified motion for an extension of time with the Chairman of the House of Delegates.... The Chairman may grant up to a sixty (60) day extension of time for the Trial Commissioner to file his report. If the Trial Commissioner fails to timely file the report of a verified motion for extension of time, the Chairman *shall* request the Supreme Court to issue a show cause order to the Trial Commissioner. (Emphasis added.)

This Rule was indeed violated. The Trial Commissioner's report was filed with the Board 4½ months after the transcript of evidence was completed, 3½ months after the time required by the Rule, and none of the procedures concerning late reports were complied with.

Although the provisions of the rule are mandatory for the KBA, Baker has failed to show any way in which he was prejudiced by this violation. We also do not find any prejudice to Baker by the other alleged procedural irregularities.

Having reviewed the Board's decision, it is the decision of this Court to adopt the Board's recommendation.

WHEREFORE, IT IS ORDERED that Keith D. Baker be suspended from the practice of law for nine months, and he is ordered to pay the costs of this action pursuant to SCR 3.450.

Pursuant to SCR 3.390, the respondent shall, within ten (10) days from the date of the entry of this order, notify all clients in writing of his inability to represent them and

to furnish photostatic copies of said letters of notice to the director of the Kentucky Bar Association.

All concur.

/s/  Robert F. Stephens
Chief Justice